IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT THEODORE SANFORD JR.<br><br>Defendant. | Case No. 1:24-CR-110 |

## STATEMENT OF FACTS

The United States and the defendant, Robert Theodore Sanford Jr., agree that the following facts are true and correct, and that had this matter proceeded to trial, the United States would have proven them beyond a reasonable doubt with admissible and credible evidence:

1) From at least in and around December 2022, and continuing thereafter up to and including at least May of 2023, the exact dates being unknown, in Fairfax County, Virginia, within the Eastern District of Virginia, and elsewhere, the defendant did knowingly and intentionally combine, conspire, confederate, and agree with Javonte Smallwood (hereinafter "Smallwood") and others, both known and unknown, to distribute:

   a) a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly referred to as fentanyl, a Schedule II controlled substance;

   b) a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance; and

   c) a mixture and substance containing detectable amounts of Buprenorphine and Naloxone, pharmaceutically produced as Suboxone, a Schedule III controlled substance.

1

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846.

2) Further, on multiple occasions, including April 13, 2023, at the Fairfax County Adult Detention Center, in the Eastern District of Virginia, the defendant, ROBERT THEODORE SANFORD JR., contrary to statute, specifically Title 21, United States Code, Section 841(a), provided prohibited objects, including fentanyl and Suboxone, both narcotic drugs, as well as cocaine, a Schedule II controlled substance, to Javonte Smallwood, an inmate of the Fairfax County Adult Detention Center, a prison, institution, and facility in which persons are held in custody by direction of and pursuant to a contract and agreement with the Attorney General, in violation of Title 18, United States Code, Section 1791(a)(1).

3) The Fairfax County Adult Detention Center ("Fairfax ADC") in Fairfax, Virginia, within the Eastern District of Virginia, is a 1300-bed minimum-security pretrial holding facility operated by deputies of the Fairfax County Sheriff's Office ("FCSO"). Fairfax ADC accepts detainees arrested by FCSO, the Fairfax County Police Department ("FCPD"), and federal agencies. Fairfax ADC houses federal prisoners in custody pursuant to a contract or agreement with the Attorney General.

4) From in or around May 2021, and continuing through on or about June 21, 2023, the defendant was employed by FCSO as a correctional officer (specifically as a deputy sheriff), working at Fairfax ADC. The defendant's duties included supervising inmates and ensuring a safe, secure prison operation.

5) From in or around January 2020, and continuing through the present, Javonte Smallwood was an inmate housed at Fairfax ADC.

6) FCSO policies prohibit employees from engaging in certain conduct, including:

   a) Delivering of any message, contraband, and anything else to an inmate outside the official discharge of one's duties;

2

    b) Divulging information from agency records to outside sources; and

    c) Using their authority and position for financial gain.

**I. Trafficking of Controlled Substances and Other Contraband**

    7) Nevertheless, while serving as a correctional officer at Fairfax ADC, the defendant on multiple occasions between December 2022 and May of 2023 smuggled contraband to Smallwood, outside of the official discharge of his duties. Further, as described in additional detail below in Section II, the defendant routinely disclosed confidential, law enforcement sensitive FCSO information to Smallwood in order to further their drug distribution and contraband smuggling schemes.

    8) The contraband smuggled by the defendant into Fairfax ADC included a cell phone; distribution quantities of fentanyl, cocaine, and Suboxone. The defendant also provided to Smallwood, at times smuggling in, additional items intended to conceal contraband from other members of FCSO, including glue and rubber gloves.

    9) In December 2022, the defendant smuggled a contraband iPhone into Fairfax ADC to allow the defendant and Smallwood to better communicate in furtherance of the conspiracy. Thereafter, the defendant regularly communicated with Smallwood on the contraband phone.

    10) During the course and in furtherance of this offense, the defendant personally distributed, or it was reasonably foreseeable to him that his co-conspirators distributed, various controlled substances, the types and quantities of which amounted to at least 20 KG of converted drug weight through the application of the Drug Conversion Tables contained in the United States Sentencing Guidelines. The specific controlled substances distributed by the defendants and others included:

    a) counterfeit oxycodone pills containing fentanyl. These pills are typically round blue pills imprinted with "M" and "30" and mimic the markings associated with pharmaceutical oxycodone 30mg pills.

    b) pharmaceutically produced Suboxone. Suboxone is a pharmaceutical combination of buprenorphine and naloxone used to treat opioid use disorder. Buprenorphine weakens intoxication from other opioids, prevents cravings and withdrawal symptoms, and allows individuals to transition from a life of addiction to a life in recovery. Suboxone is also highly diverted for abuse, in particular within prisons. The defendant and his conspirators obtained pharmaceutically produced Suboxone and repackaged it to facilitate smuggling it into prison and their distribution therein.

11) Typically, Smallwood did not advertise the controlled substances provided by the defendant for sale within Fairfax ADC until multiple days had passed since a shift that the defendant was on duty in Smallwood's cell block. Smallwood informed the defendant that he did this so that inmates would not suspect the defendant as Smallwood's source of supply.

12) Smallwood enlisted additional inmates within other housing locations at Fairfax ADC to assist in the distribution of controlled substances to inmates. Smallwood informed the defendant that he did so such that law enforcement's attention would not be drawn to his own housing location.

13) During the conspiracy period, Smallwood and others on Smallwood's behalf, paid the defendant at least $1,630 in bribe payments to bring the contraband into Fairfax ADC. Typically, for each transaction, the defendant received half of the bribe payment at the time the deal was arranged, and the second half once he received the contraband from co-conspirators in and around the Washington, DC area.

14) It was further part of the conspiracy that the defendant obtained cocaine for distribution to persons outside of Fairfax ADC. Specifically, on at least two occasions, the defendant obtained cocaine through Smallwood to distribute to women who associated with the defendant at an apartment in or around Baltimore.

15) For example, in or around April 2023, the defendant sourced cocaine from Smallwood to distribute to one of these prostitutes. After receiving an initial sample, the defendant requested more cocaine from Smallwood, noting "that shit goin to make me $$$$ I need them going like the energizer bunny."

16) The defendant used an electronic communications application to send and receive messages and calls with Smallwood and other co-conspirators, in an attempt to conceal his involvement in criminal activity. This electronic messaging application provided the defendant with multiple 10-digit phone numbers that the defendant used in furtherance of the criminal activity. Though the electronic communication application provided the defendant the opportunity to use the cell phone number that his carrier assigned to his cell phone, the defendant chose not to do so in order to better conceal his involvement in criminal activity. The defendant used this electronic communications application solely for communications in furtherance of criminal activities.

## II. MISUSE OF PRISON INFORMATION

17) A goal of the conspiracy included the continued success of the drug-trafficking scheme despite constant law enforcement presence at Fairfax ADC. It was therefore part of the conspiracy that the defendant and Smallwood conspired to evade FCSO detection of their scheme and ensure its continued operation. This goal was accomplished in a number of ways, including:

a) the defendant routinely provided confidential and sensitive law enforcement information to Smallwood regarding FCSO's ongoing investigative activities within Fairfax ADC; and

b) the defendant conspired with Smallwood to identify and intimidate potential informants amongst inmates within Smallwood's housing location.

18) The defendant's conduct in furtherance of this goal was in violation of the defendant's sworn duties and at risk to the safety and order of Fairfax ADC.

19) On multiple occasions, the defendant provided Smallwood with advance warning of upcoming investigative activities of FCSO within the prison. This included the defendant warning Smallwood regarding when FCSO was conducting investigative activities, what housing units their efforts were directed at, the nature of what kinds of searches they planned to perform, and whether drug-sniffing canines were being utilized. The defendant also reported back to Smallwood when FCSO investigative activities successfully discovered contraband within the prison.

20) Further, on multiple occasions the defendant conspired with Smallwood to identify potential prison informants. For example, on one occasion, the defendant agreed via text message to look up how many "keep separate[s]" Smallwood had in the prison's systems. "Keep separates" are a mechanism utilized by law enforcement and prisons to ensure that inmates are separated whose contact could lead to witness intimidation or potential violence. Inmates are not typically informed of who they are kept separate from, as such information could identify individuals actively cooperating against them. The defendant responded an hour after Smallwood's above-referenced request with the identity of an individual who had a keep separate in place with Smallwood.

21) On another occasion, Smallwood asked the defendant to look up information revealing why an associate of his had gone to the "hole." The defendant thereafter revealed to Smallwood that another deputy had reported on the inmate to the prison's Sheriff's Intelligence Unit (SIU). After Smallwood asked if there was a report regarding the inmate's conduct, the defendant relayed "yea it is I'm looking for it now." Smallwood replied, "that's important we need to know

wat it say." The inmate referenced in this conversation was a customer of the drugs trafficked by the defendant and Smallwood.

22) On multiple occasions, Smallwood offered to intimidate potential informants through acts of violence. For example, on one occasion the defendant warned Smallwood via text message that an inmate in Smallwood's housing location was "hot" because he had "dry snitched on one of the deputies." The defendant instructed Smallwood "I want him down in the zoo or hole" and that "he will fuck up a whole operation." Days later Smallwood updated the defendant that the inmate "gotta go easy way or da hard way" and that "my man on his ass." In response, Smallwood physically assaulted the inmate, telling the defendant "I went on him yesterday look like he wanted to cry." The defendant responded "[g]ood he should be wantin to move out soon." The following day Smallwood informed the defendant that the inmate had gone to medical and that Smallwood told him not to come back to Smallwood's cell block. In response to learning this information, the defendant agreed to look for any reports revealing whether the inmate reported the intimidation to FCSO.

23) On another occasion, Smallwood reported to the defendant that he "had to beat the shit out of" another inmate. The defendant replied asking whether the inmate had cooperated and offering to research any internal reports regarding the inmate's cooperation.

## III.   DISCOVERY OF CONTRABAND BY FCSO

24) On May 4, 2023, FCSO deputies at Fairfax ADC conducted a facility search in Smallwood's housing block after deputies learned from another inmate that Smallwood was in possession of a cellular device and counterfeit fentanyl pills. Deputies later conducted a strip search of Smallwood and discovered multiple items of contraband in Smallwood's long underwear. The items included one iPhone 6s, two charging cables, one portable cellular phone charger, one USB charging brick, 92 counterfeit oxycodone pills, 174 strips of Suboxone, and over three grams of

cocaine. Before this date, the defendant had smuggled the controlled substances into Fairfax ADC for Smallwood, knowing that Javonte Smallwood had intended to distribute these controlled substances within Fairfax ADC.

25) On May 5, 2023, the day after the discovery of contraband on Smallwood's person by FCSO, the defendant was informed of the seizure during roll call.

26) That same day, the defendant removed the cash tag name $mrneedsitnow and his personal email address from the CashApp account he used in furtherance of the conspiracy. The defendant had previously shared the cash tag name $mrneedsitnow with co-conspirators on numerous occasions to obtain bribe payments for smuggling contraband into Fairfax ADC. This was done by the defendant in an attempt to conceal his involvement in providing the contraband to Smallwood.

27) Also, on or about that same day, May 5, 2023, the defendant stopped sending messages and making calls on the electronic communications application he used to communicate with Smallwood and other conspirators. The defendant further on or about May 5, 2023, deleted messages that he had sent in furtherance of the charged offenses. Thereafter, on or about May 13, 2023, the defendant obtained a new assigned phone number on the electronic communications application that he then used to communicate with co-conspirators.

28) Within two weeks of FCSO discovering contraband on Smallwood's person, the defendant began the process of resigning from his job at FCSO. In resigning, the defendant told FCSO that childcare challenges were the reason for his resignation. FCSO offered a new work schedule to accommodate the defendant's childcare needs, which the defendant refused.

29) This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the

defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

30)   The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date: June 5, 2024          By: _____
                            Heather D. Call
                            Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, ROBERT THEODORE SANFORD JR., and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
ROBERT THEODORE SANFORD JR.

I am Todd Richman, defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Todd M. Richman
Attorney for Robert Sanford Jr.